UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-03938 |
| | § | |
| HARRIS COUNTY, | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case arises from a sexual assault allegedly committed by one detainee against another at the Harris County Inmate Processing Center ("IPC") in May of 2004. The victim of the assault, John Doe,[1] brings suit against Harris County for maintaining certain policies which he contends posed a substantial risk of harm and facilitated the assault. He claims that these policies violated his constitutional rights to basic safety actionable under 42 U.S.C. § 1983 and constituted common-law negligence actionable under the Texas Tort Claims Act. In response, the county argues that the evidence cannot establish municipal liability under either the plaintiff's section 1983 claim or his state tort claim.

To that end, Harris County filed a motion for summary judgment, positing that both claims must fail as a matter of law. After considering the motion, plaintiff's response, defendant's reply, the evidence of record, and the applicable law, the court concludes that the motion should be

---

[1] Plaintiff sued Harris County under this fictitious name to protect his privacy. Out of courtesy to the plaintiff, Harris County has not insisted on the substitution of plaintiff's real name pursuant to FED. R. CIV. P. 17, but the county has reserved the right to do so in the future.

GRANTED.  Moreover, the court need not address defendant's pending *Daubert* motion, as the challenged expert's report does not raise a genuine issue of material fact on any issue.  Accordingly, defendant's pending motion to exclude is DENIED AS MOOT.

## II. Factual and Procedural Background

Before examining plaintiff's substantive claims, the court will briefly recount the facts of the case in the light most favorable to the plaintiff, as the court must on defendant's motion for summary judgment.  *See Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc).  On May 13, 2004, plaintiff was driving home from his job in the Texas Medical Center in Houston.[2]  Plaintiff was accompanied by a coworker, to whom he was providing a ride home.  While driving through the nearby city of West University Place, plaintiff was stopped by police, as his truck resembled a vehicle associated with a robbery committed earlier that night.[3]  Police searched the vehicle and discovered illegal narcotics under the passenger seat.[4]  The officers arrested plaintiff and his coworker and charged both individuals with misdemeanor possession of marijuana and felony possession of a controlled substance.[5]  On the following day, a Thursday, police transported plaintiff to the Harris County IPC.[6]

_____

[2] *See* Dkt. 18 at 4.

[3] *Id.* at 4-5.

[4] *Id.* at 5.

[5] Dkt. 1 at 12.

[6] *Id.*  Although not material to the resolution of this case, the Harris County District Attorney's office subsequently dismissed the marijuana possession charge on August 25, 2004, and a jury acquitted plaintiff of possession of a controlled substance on March 29, 2005.  *Id.*

When he arrived at the detention center at approximately 10 a.m., jail officials placed plaintiff in a crowded holding cell, containing approximately 200 to 300 detainees.[7]  The cell was furnished with benches along its perimeter, and toilets along the back wall.[8]  Officers could visually monitor cell activities through a small window in the door and two picture windows along one side of the cell.[9]  Officials never monitor IPC cells through constant video surveillance.  Also, with regard to audio monitoring, the jail did not constantly survey cell discussions, but detainees could communicate with officers through an intercom activated within the cell.[10]

Soon thereafter, officials moved plaintiff to another holdover cell that had a similar design and the same number of detainees as the previous cell.[11]  Plaintiff felt surrounded by his fellow inmates, and he sat on the floor to rest.  By early afternoon, he got up to use the restroom at the back wall.  As the plaintiff relieved himself, with his back to the other inmates, he was grabbed from behind by an unknown assailant.  Plaintiff's fellow inmate forcibly held him down, and sexually assaulted him.  Plaintiff tried to resist, but to no avail.  He also cried out during the attack, which lasted about 2-3 minutes, but no one heeded his calls for help.[12]  Once the rape was over, plaintiff banged on the door and called out for a guard.  Again, no one responded.[13]  Fearing for his safety,

---

[7] Dkt. 18, Ex. 5 at 1; Dkt. 1 at 12.

[8] Dkt. 18 at 5.

[9] *Id.*; *see also* Dkt. 18, Ex. 2 at 54.

[10] Dkt. 18 at 5.

[11] Dkt. 1 at 12.

[12] Dkt. 18, Ex. 5 at 2.

[13] Dkt. 18 at 6.

plaintiff ceased his calls for help, and he patiently waited for his parents to bail him out of jail. Plaintiff never reported the rape to any IPC official, as he felt embarrassed about the incident.[14]

At approximately 8:30 p.m., plaintiff's parents bailed him out, and his mother immediately took him to Pasadena's Bayshore Hospital for an examination.[15]  After the exam, plaintiff reported the incident to Officer Zepeda of the Houston Police Department ("HPD").[16]  Plaintiff explained the details of the assault and also told the officer that although he saw his assailant, he would not be able to identify the attacker at a later time.  In Officer Zepeda's report, plaintiff simply recounted the actions of the attacker and plaintiff's response.  Zepeda did not record any statement from the plaintiff regarding any questionable conditions of confinement at the IPC.[17]

More than a year later, on September 16, 2005, plaintiff filed suit against Harris County in the 61st Judicial District Court of Harris County, Texas.  He alleged § 1983 claims for constitutional violations under the Eighth and Fourteenth Amendments, and state-law claims of negligence and premises liability under the Texas Tort Claims Act.  On November 21, 2005, the defendant timely removed this case to this court, pursuant to 28 U.S.C. § 1441(a).  After extensive discovery, defendant moved for summary judgment on both the plaintiff's federal constitutional claims and supplemental state-law claims.  Plaintiff responded and defendant replied to that response.  The motion is now ripe for decision.

---

[14] Dkt. 18, Ex. 5 at 2.

[15] *Id.*; Dkt. 18 at 6.

[16] Dkt. 18, Ex. 5 at 1-2.

[17] *Id.*

### III. STANDARD OF REVIEW

Summary judgment should be granted if the record, taken as a whole, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the moving party meets this burden, however, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80

5

F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S. Ct. 2505 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*, 477 U.S. at 248.

## IV. ANALYSIS

Plaintiff's original petition asserts the following claims: (1) section 1983 claims alleging that IPC policies and procedures violated his constitutional right to safety; and (2) state-law claims alleging that defendant's negligence and maintenance of defective conditions caused plaintiff's injury and entitles him to relief under the Texas Tort Claims Act. The court considers each of these claims in turn.

### A. SECTION 1983

Section 1983 creates a cause of action against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983 (2000). Although Congress did not specifically define the statutory term "person" to include counties or

similar municipalities, the Supreme Court has held that these entities, as artificial persons, can be held liable for § 1983 violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."). Here, plaintiff claims that Harris County deprived him of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

## 1. Eighth Amendment

The plaintiff's petition alleges that the defendant violated his Eighth Amendment rights. The defendant responds that the court should dismiss this claim because the Eighth Amendment is inapplicable to this case. In order to show an Eighth Amendment violation, plaintiff must be a convicted inmate, for the Eighth Amendment's ban on "cruel and unusual *punishment*" protects only those inmates who have received an adjudication of guilt and may be punished by the State under the Constitution. *See* U.S. CONST. amend. VIII (emphasis added); *Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993). In other words, although the State may punish a convicted criminal, it may not inflict "unnecessary and wanton . . . pain" that violates the Eighth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 669-70, 97 S. Ct. 1401 (1977) (internal quotation marks omitted). But when, as here, the plaintiff asserts that the harm occurred while he was a pretrial detainee, his claim must be brought under the Fourteenth Amendment's Due Process Clause rather than under the auspices of the Eighth Amendment. *See Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861 (1979)). Accordingly, plaintiff's Eighth Amendment claim fails as a matter of law.

7

**2.  Fourteenth Amendment**

Plaintiff also alleges a violation of his Fourteenth Amendment rights.  "The constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment, *see Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861 (1979), which provides that no state 'shall . . . deprive any person of life, liberty, or property, without due process of law . . . .'  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525-26 (5th Cir. 1999) (quoting U.S. CONST. amend. XIV, § 1).  In this case, plaintiff claims that the negligence of IPC jailers and the policies of the county violated his Fourteenth Amendment due process right to minimal safety and security.  *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S. Ct. 998 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and *reasonable safety*—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." (emphasis added)).

In analyzing pretrial detainees' constitutional challenges, the Fifth Circuit has instructed lower courts at the outset of the decision to classify the case as one of two types: as an "attack on a 'condition of confinement' or as an 'episodic act or omission.'"  *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc); *see also Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996) (en banc); *Flores v. County of Hardeman, Tex.*, 124 F.3d 736 (5th Cir. 1997).  This first category includes such claims as "where a detainee complains of the number of bunks in a cell or his television or mail privileges."  *Scott*, 114 F.3d at 53.  Hence, the wrong of which the detainee complains, the unconstitutional infliction of punishment, is the condition itself.  In these cases there is a direct link between the

policy supporting the condition and the actual harm suffered by the detainee.  *See id.* ("In many jail condition cases, the conditions themselves constitute the harm.  This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions.").

By contrast, in the second category of cases, episodic act or omission claims, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."  *Id.*  Episodic act or omission cases, like conditions of confinement claims, implicate a municipal policy.  However, for episodic act or omission cases the policy at issue is one step removed from the individual act or omission that directly caused plaintiff's alleged harm.  *See id.* ("[T]he actual *harm* of which [plaintiff] complains is . . . an episodic event perpetrated by an actor interposed between [plaintiff] and the city, but allegedly caused or permitted by the aforesaid general conditions.").  It may therefore be said that the policy facilitated the harm but did not directly cause its occurrence.

Also, in deciding how to classify a certain case, the district court is not bound by the plaintiff's characterization.  Rather, the court should carefully review the gravamen of plaintiff's petition to determine the proper classification for its analysis.  *See id.*; *see also Flores*, 124 F.3d at 738 (finding that although plaintiff pled the case as a episodic case *and* as a conditions of confinement case, the court had to consider the case as an episodic case under existing circuit precedent).  In *Scott*, plaintiff Artelia Scott was raped by a jail official while she was in pretrial detention at the Killeen City Jail.  *Scott*, 114 F.3d at 52.  Scott pled the case as a conditions of confinement case, arguing that the inadequate staffing policy in effect at the city jail caused the sexual assault.  *Id.* at 53 ("Scott complains generally of inadequate staffing, i.e., by having only one

individual on duty, and/or by not having a female member present when female members are confined.'"). Nevertheless, the Fifth Circuit en banc concluded that the case properly fell within the rubric of an episodic event. *Id.* The court found that although the plaintiff pointed generally to particular policies at the jail, the actual harm she suffered was not directly caused by those policies, as in the case where a policy of providing inadequate food to inmates would lead to malnutrition. *Id.* Instead, plaintiff's petition really pointed to an injury directly caused by a single jailer in an isolated incident of sexual assault, which indeed may have been secondarily caused by a policy of arguably inadequate staffing. *Id.* ("Here, however, Scott did not suffer from the mere existence of the alleged inadequate staffing, but only from Moore's specific sexual assaults committed on but one occasion."). Thus, the court found that despite plaintiff's claims to the contrary, the case bore a close connection to an episodic case and should be analyzed accordingly. *Id.*

Similar to the plaintiff in *Scott*, the plaintiff in this case argues that this case should be evaluated as a conditions of confinement case. Despite this assertion, plaintiff also makes general allegations that IPC jailers failed to protect him and did not come to his aid during the assault. *See* Dkt. 1 at 12-13. The defendant seizes on this claim in plaintiff's original petition and argues that this case should be considered an episodic case because the plaintiff is essentially claiming that the inaction of the jailers was compounded by the policies, practices, and procedures in effect at the IPC. This dual allegation of causation, according to the defendant, forecloses attribution of plaintiff's harm solely to any unconstitutional conditions of confinement under existing circuit precedent.

The court agrees with the defendant. Under *Scott v. Moore*, it is difficult to imagine how this claim could be classified as a "conditions of confinement" case. Here, plaintiff's harm was not immediately caused by any policy at the IPC of overcrowding, intermittent audio and visual

10

surveillance, or a failure to segregate detainees based on the type of offense for which they are accused. These are simply not conditions that by their very nature will produce a sexual assault. In fact, the real *harm* plaintiff alleges is a denial of adequate protection that was primarily caused by the inaction of IPC staff. *See* Dkt. 1at 13 (complaining that during the assault, "[n]o guard or detainee came to his aid."). Although plaintiff does challenge a series of policies and practices in his petition, these policies can only be considered as part of a confluence of circumstances leading to the sexual assault, with the omissions of the jailers bearing primary responsibility. In the plaintiff's own words: "Defendant, its employees, and *the guards on duty* were deliberatively [sic] indifferent to the lack of safety and/or dangerous conditions present in the cells . . . ." *See id.* (emphasis added).

In sum, just as the claim in *Scott* was deemed an episodic case despite its label, plaintiff's "case does not fit well within the conditions-of-confinement category and, in fact, bears a closer resemblance to cases regarding episodic acts by prison employees." *Scott*, 114 F.3d at 54. Thus, the court will consider plaintiff's claim under the deliberate indifference test utilized in episodic cases rather than the reasonable relationship test used in conditions of confinement cases. *See Hare*, 74 F.3d at 643, 646. Notably, however, "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases."[18] *Scott*, 114 F.3d at 54 (quoting *Hare*, 74 F.3d at 643).

---

[18] Plaintiff agrees that under either standard, a failure to adduce sufficient evidence of the defendant's deliberate indifference to preclude summary judgment is fatal to the claim. *See* Dkt. 18 at 9 (quoting *Hare* and adding that the reasonable-relationship test is "not too distant from a standard of arbitrary and capricious [conduct]," *see Hare*, 74 F.3d at 646, when evaluating the county's liability). Thus, the plaintiff has effectively waived any argument that the reasonable relationship test is in any way distinct from the deliberate indifference test the court employs in this case.

## a. The Episodic Act Analysis

Unlike most cases arising from a jail assault, in which individuals and governmental agencies are named as defendants, plaintiff brings suit against the county alone. Nevertheless, the court must employ the same analysis applicable to all episodic cases. The Fifth Circuit has applied a two-step, bifurcated analysis to episodic cases because "[w]hile the specific episode may be perpetrated by one or more persons, any underlying conditions that may have caused it or made it possible are the product of the city's policy, action, or inaction." *Id.* In essence, the court separates the inquiry applicable to the episodic act or omission ("the constitutional violation simpliciter") from that "pertinent to the custom, rule, or policy that is alleged to have permitted the act ('a municipality's liability for that violation')." *Id.* (quoting *Hare*, 74 F.3d at 649 n.4). According to the *Hare* court, the analysis proceeds as follows:

> We separate the two issues: the existence of a constitutional violation simpliciter and a municipality's liability for that violation. Different versions of the deliberate indifference test govern the two inquiries. Our opinion in this case makes clear that to prove an underlying constitutional violation in an individual or episodic acts case, a pre-trial detainee must establish that an official acted with *subjective* deliberate indifference. Once the detainee has met this burden, she has proved a violation of her rights under the Due Process Clause. To succeed in holding a municipality accountable for that due process violation, however, the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional rights. *See Farmer* [*v. Brennan*, 511 U.S. 825, 841, 114 S. Ct. 1970, 1981 (1994)] ("It would be hard to describe the *Canton* [*v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989)] understanding of deliberate indifference, permitting liability to be premised on obviousness or constructive notice, as anything but objective.).

*Hare*, 74 F.3d at 649 n.4 (alterations in original). The court will now apply the two-part test to the facts of this case.

1.   The Jailers' Inaction

As to the discrete omissions of the jailers on duty, the plaintiff "must establish only that the constitutional violation complained of was done with *subjective* deliberate indifference to [his] constitutional rights." *Scott*, 114 F.3d at 54.  In order to show subjective deliberate indifference, plaintiff must demonstrate that the jailers actually knew of "facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994); *see also Olabisiomotosho*, 185 F.3d at 526.  In the *Farmer* Court's words:

> An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.  The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (citations omitted).

Here, the plaintiff claims that even though he screamed throughout the assault and banged the cell door afterward to get the attention of the guards on duty, no one came to his aid.  At his deposition, plaintiff claimed that while he could see the guards through the cell window, "they wouldn't pay any attention to me." Dkt. 18, Ex. 1 at 32.  Significantly, however, plaintiff also states that he "[has] no clue" whether the guards had any reason to believe the attack was imminent, or that it had even occurred and then deliberately ignored plaintiff's calls for help.  *Id.* at 34.  Given these statements, and that none of the guards on duty at the time have been identified or deposed, there is no credible evidence in the record that those guards *actually* drew the inference that plaintiff was subject to a serious risk of harm while inside the jail cell.  At best, plaintiff's circumstantial evidence

establishes that the jailers should have come to his aid. "Nevertheless, liability attaches only if [the officials] actually knew—not merely should have known—about the risk." *See Olabisiomotosho*, 185 F.3d at 528 (citing *Farmer*, 511 U.S. at 838). Without such evidence, plaintiff cannot prove a necessary element of his § 1983 claim, and his claim fails as a matter of law. *See Celotex*, 477 U.S. at 322 ("The moving party is 'entitled to a judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (quoting FED. R. CIV. P. 56(c))).

2.   The County's Potential Liability

Assuming, *arguendo*, that plaintiff could show that the jailers acted with deliberate indifference, the court must next evaluate whether the county should be liable for plaintiff's injury. Under applicable Supreme Court and Fifth Circuit precedent, "municipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978)). In other words, the unconstitutional conduct must be attributable to the municipality through a policymaker's action or inaction; isolated acts by county employees will rarely trigger liability. *See Piotrowski*, 237 F.3d at 578. "The three attribution principles identified here–a policymaker, an official policy, and the 'moving force' of the policy–are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id.* With these background principles in mind, the court will now address each of these elements individually.

14

### *a. The Policymaker*

The touchstone of municipal liability is the identification of a policymaker who knew or should have known of a policy in existence that caused plaintiff's injury. Stated differently, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc). The Supreme Court has repeatedly affirmed that the plaintiff must identify an official with final policymaking authority to support the imposition of municipal liability. *See Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702 (1989); *St. Louis v. Praprotnik*, 485 U.S. 112, 121-22, 126, 108 S. Ct. 915 (1988) (plurality opinion); *Pembauer v. City of Cincinnati*, 475 U.S. 469, 482-83, 106 S. Ct. 1292 (1986) (plurality opinion); *Monell*, 436 U.S. at 659 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

In the instant case, plaintiff never identifies any Harris County official with final policymaking authority over jail conditions, or anyone who had actual or constructive knowledge of any longstanding practices at the jail to support municipal liability. Instead, plaintiff's response continually mentions that "Harris County" knew or should have known about the risks to plaintiff's safety. Plaintiff's expert report is slightly more specific, stating that the "conditions, customs, practices, policies, and procedures at the [IPC] . . . created an inherently dangerous environment that was obvious to *IPC personnel*. . . ." Dkt. 18, Ex. 8 at 7. Nevertheless, the plaintiff never identifies

a particular person or persons who have final policymaking authority over law enforcement, which would include the county sheriff under Texas state law.  *See Turner v. Upton County, Tex.*, 915 F.2d 133, 136 (5th Cir. 1990) ("It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement . . . .").  The requirement that the plaintiff identify a policymaker is not an exercise in mere formalism; it is an essential element to prove that the county itself is a culpable "person" under § 1983.  *See Piotrowski*, 237 F.3d at 578-79.  Accordingly, without competent evidence suggesting the involvement of a policymaker in the policies allegedly responsible for plaintiff's injury, plaintiff's § 1983 claim cannot proceed.

### *b. The Policies*

Plaintiff must also prove that an "official policy" of the municipality was responsible for his constitutional deprivation.  Although official policies are usually memorialized in written form, a policy sufficient to trigger § 1983 liability may also be evidenced by the unwritten, customary practices of a county.  According to the Fifth Circuit, to be a policy, such custom must be a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Webster*, 735 F.2d at 841.  Moreover, "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability."  *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).  To demonstrate a customary policy, plaintiff must show a "well-settled and permanent" practice that was "promulgated or maintained with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."  *See Praprotnik*, 485 U.S. at 144;

16

*Piotrowski*, 237 F.3d at 579 (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382 (1997)).

Here, plaintiff argues in his summary judgment response that the following IPC customs are responsible for his injury: (1) overcrowding of cells; (2) insufficient visual surveillance of inmates; and (3) failure to separate violent criminals from the general population in holding cells.  Dkt. 18 at 10-12.  As to the first alleged policy, overcrowding, plaintiff has not offered any credible evidence that it was a widespread, persistent practice to populate a cell in excess of the maximum levels imposed by the Texas State Commission on Jail Standards.  Plaintiff's citation to the deposition testimony of IPC officers only tends to show that on certain occasions IPC cells were overcrowded beyond state standards.  Similarly, as to the second claimed policy, inadequate visual surveillance of inmates, plaintiff's evidence at best demonstrates periodic violations of the applicable standard, which requires monitoring of inmates at least every thirty minutes.  Again, as a matter of law, allegations of isolated incidents are insufficient to prove a custom or policy.  *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

Regarding the third possible custom, the court agrees with the plaintiff that the IPC had an actual and persistent practice of not separating detainees at intake based on the type of offense for which they were arrested.  However, as to this policy and the other alleged customs, plaintiff offers no credible evidence that their existence created a "substantial risk" of harm to IPC detainees.  *See Scott*, 114 F.3d at 54.  Plaintiff's only evidence which supports his theory is Terry Julian's expert report, which opines that the policies in effect at the IPC created an "inherently dangerous environment" that seriously threatened inmate's safety.  *See* Dkt. 18, Ex. 8 at 7.  However, Mr.

17

Julian's bare, conclusory statement that these policies created a substantial risk to inmate safety cannot preclude summary judgment.  To be competent summary judgment evidence, an expert's report must contain some "indication of the reasoning process underlying the opinion." *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998); *see Michaels v. Avitech, Inc.*, 202 F.3d 746, 754 (5th Cir. 2000) (finding that an expert's statement, without justification, that a repair to an aircraft's vacuum pump should take longer than 3.2 hours could not defeat summary judgment); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997) ("[N]othing in either *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993)] or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").  As Julian's statements are unsupported by any analysis, extensive or otherwise, of the facts of this litigation, the conclusions of this report cannot defeat summary judgment.

And as an aside, Julian's conclusions are diametrically opposed to the statistical evidence in the record.  According to defendant's expert, Jerome Graeber, whose findings the plaintiff does not contest:

> The plaintiff's allegation of sexual assault is the only one for 2004 in the IPC. Therefore, the IPC, in 2004 has .008 [incidents] per 1,000 prisoners.  The IPC rate of alleged sexual assault is 121.25 times less likely than the national average of alleged inmate on inmate non-consensual sexual acts for public local jails.  It is also 112.5 times less likely than the overall national rate for reported crimes of rape and sexual assault.

Dkt. 15, Ex. 7 at 12 ¶ 32.  And despite plaintiff's expert's previous assertion about the IPC environment, he later stated at his deposition that he could not recall ever sending a letter to a Harris County official regarding any "inherently dangerous conditions" at the IPC while he was Executive Director of the Texas jail standards commission.  *See* Dkt. 15, Ex. 8 at 66-69 (When asked to

confirm that he was "not aware of any dangerous conditions," Julian responded, "Correct."). Therefore, the evidence of record does not establish that any IPC policies posed a substantial or inherent risk to detainees.  Instead, the evidence supports the view that the IPC environment was a relatively safe one.  The policy element of plaintiff's claim fails as a matter of law.

### c. Causation

_____Lastly, plaintiff must demonstrate that the county's policies were the "moving force" behind the constitutional violation.  *See Monell*, 436 U.S. at 694.  The Supreme Court has clarified that this relatively new causation standard requires a showing of "a direct causal link between the municipal action and the deprivation of federal rights."  *Bryan County*, 520 U.S. at 410.  In an episodic case in particular, "to succeed in holding a municipality accountable for [the employee's] due process violation, . . . the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional rights. *See Scott*, 114 F.3d at 54.

Here, defendant argues that plaintiff has not adduced any competent evidence on the issue of causation, and therefore the defendant is entitled to judgment as a matter of law.  Without citing any record evidence, plaintiff responds with the bold statement that "Harris County's failure to take any reasonable steps to alleviate the danger posed to its detainees was a direct and proximate cause of Doe's injuries."  Dkt. 18 at 12.  Plaintiff's expert adds that Harris County's policies "caused in [fact] Plaintiff's injury and violated his basic right to safety."  Dkt. 18, Ex. 8 at 7.

Plaintiff contends that this evidence creates a fact issue which precludes summary judgment. The court disagrees.  With regard to plaintiff's unsubstantiated statement, plaintiff is well aware that

the arguments of counsel are not admissible summary judgment evidence, *see FDIC v. LeGrand*, 43

F.3d 163, 171 (5th Cir. 1995), and even if they were, the conclusory nature of this assertion

precludes its admissibility.   *See Little*, 37 F.3d at 1075.   Furthermore, regarding the expert's

conclusion about causation, this statement is also bereft of any substantive analysis.  *Boyd*, 158 F.3d

331.   Accordingly, for the reasons stated above, the court finds that the expert's unsupported

conclusion is insufficient to  raise a genuine issue of material fact on the issue of causation.

**b. Conclusion**

      Plaintiff, a pretrial detainee, pled his § 1983 claim as a conditions of confinement case.

However, given plaintiff's allegations of jailer inaction during his sexual assault, his claim more

closely resembles an episodic act or omission case.   The plaintiff has sued Harris County for this

inaction, and in order to prove municipal liability, plaintiff must demonstrate that (1) a jail official's

subjective deliberate indifference to plaintiff's rights resulted from (2) the maintenance of a policy

or policies with objective deliberate indifference to detainee's due process right to minimal safety.

In this case, plaintiff's evidence does not raise a genuine issue of material fact as to either element

of liability against Harris County, and the county is entitled to judgment as a matter of law.[19]

---

[19] The court notes that even had it considered this § 1983 claim as a conditions case, it
would have reached the same result.  In such cases, a constitutional violation exists only if the
court determines that the condition of confinement is not reasonably related to a legitimate, non-
punitive governmental objective.  *See Hare*, 74 F.3d at 640 (citing *Bell v. Wolfish*, 441 U.S. 520,
539, 99 S. Ct. 1861 (1979)).  "Importantly, . . . the reasonable-relationship test employed in
conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in
episodic cases."  *Scott*, 114 F.3d at 54 (quoting *Hare*, 74 F.3d 643, 646).  As the court has
already found that plaintiff cannot establish that the county acted with deliberate indifference to
his rights, the court would similarly find that the plaintiff could not show a constitutional
violation under the analogous reasonable relationship test first enunciated in *Bell*.   Indeed,
plaintiff's evidence completely fails to show acts or omissions "not too distant from a standard of
arbitrary and capricious conduct."  *Hare*, 74 F.3d at 646.  Thus, under either test, plaintiff's §

## B. Texas Tort Claims Act

Plaintiff also asserts supplemental, state-law causes of action for negligence and premises liability under the Texas Tort Claims Act ("TTCA").  This court has jurisdiction to consider the state-law claims along with the federal § 1983 claim because both arise from the same common nucleus of operative fact that forms one constitutional case or controversy.  U.S. Const. art. III; 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 557-58, 125 S. Ct. 2611 (2005).  But before examining whether these state-law causes of action may proceed, the court will briefly review the prerequisites for filing suit against a Texas municipality under the TTCA.

Texas local governmental entities, including Harris County, are protected from liability by the doctrine of sovereign immunity absent legislative consent.  *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.,* 39 S.W.3d 591, 594 (Tex. 2001).  Under the TTCA, the Texas legislature has waived a municipality's sovereign immunity in a narrow subset of legal claims, including those involving "personal injury or death so caused by a condition . . . of tangible personal or real property."  Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005); *Hale v. Sheikholeslam*, 724 F.2d 1205, 1207 (5th Cir. 1984).  But as a threshold matter, before a plaintiff can take advantage of the benefits of a waiver, he must provide the governmental unit with formal, written notice of the claim within six months of the incident.  § 101.101(a).  However, this formal notice requirement is inapplicable if the governmental entity has actual notice of the claim.  § 101.101(c).  This notice requirement is essential in any scheme of municipal liability to allow the government to investigate the claim, prepare for trial, and settle the matter if necessary.  *See Nat'l Sports & Spirit, Inc. v. Univ. of N. Tex.,*

_____

1983 claim cannot proceed beyond the summary judgment stage.

117 S.W.3d 76, 79-80 (Tex. App.–Fort Worth 2003, no pet.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)).   "Because compliance with the notice provisions of the TTCA is a prerequisite to a waiver of sovereign immunity, failure to give notice under section 101.101 precludes the waiver of sovereign immunity from suit." *Id.* (citing *State v. Kreider*, 44 S.W.3d 258, 263 (Tex. App.–Fort Worth 2001, pet. denied); *Brown v. City of Houston*, 8 S.W.3d 331, 334 (Tex. App.–Waco 1999, pet. denied)).   Thus, if defendant can show that plaintiff did not provide the county with formal, written notice of his claims and that the county did not have actual notice, these claims must be dismissed.

The parties agree that plaintiff never formally notified Harris County of an intent to sue under § 101.101(a). *See* Dkt. 15 at 47 ("Plaintiff did not report the alleged assault to Harris County."); Dkt. 18 at 14 ("Although Doe did not provide formal notice in via [sic] letter specifically demonstrating his intent to sue under the Texas Tort Claims Act, . . . .").   The issue then is whether Harris County had "actual notice . . . that the claimant has received some injury." § 101.101(c).   According to the Texas supreme court, counter to the import of the statute's plain language, this notice must be *more* than mere knowledge of an injury.   Instead, "actual notice" under subsection (c):

> includes *subjective awareness* of [defendant's] fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury.   It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault.

*Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347-48 (Tex. 2004) (emphasis added) ("[W]e hold that actual notice under section 101.101(c) requires that a governmental unit have knowledge of the information it is entitled to be given under section 101.101(a) and a subjective

awareness that its fault produced or contributed to the claimed injury.").

In the instant case, plaintiff claims that his reporting of the incident to HPD Officer Zepeda at the hospital should satisfy the actual notice requirement under § 101.101(c). Dkt. 18 at 14. In response, defendant argues that plaintiff's report was insufficient to constitute actual notice. Dkt. 15 at 47-49. The court agrees with the defendant. In Officer Zepeda's Current Information Report, prepared after plaintiff notified him of the incident, plaintiff simply recounted the details of the sexual assault. *See id.*, Ex. 2. Nowhere in the report is there any suggestion that there were dangerous conditions present at the Harris County IPC or that any jailer deliberately ignored his pleas for aid. Accordingly, even assuming that the report to a HPD officer constitutes notice to Harris County (a dubious proposition), there was no information presented to Officer Zepeda which would make the county subjectively aware "that its fault produced or contributed to [plaintiff's] claimed injury." *Simons*, 140 S.W.3d at 348. Plaintiff's complaint to police after the incident does not constitute actual notice of any forthcoming legal claims. And without this required actual notice to waive the county's sovereign immunity, plaintiff's TTCA causes of action must fail. *Nat'l Sports*, 117 S.W.3d at 79-80.

## V. CONCLUSION

After plaintiff was sexually assaulted by a fellow pretrial detainee in the Harris County IPC, plaintiff brought suit against the county, alleging constitutional violations actionable under § 1983 and state-law claims actionable under the TTCA. First, the evidence plaintiff has adduced thus far is insufficient to preclude summary judgment on his federal § 1983 claim. He simply cannot demonstrate, under the evidence of record, that either the county or any of its employees acted with deliberate indifference to his constitutional rights to minimal safety while in the custody of Harris County. Second, plaintiff never gave Harris County notice of his impending state-law tort causes

23

of action, a prerequisite to proceed against a county under the TTCA.  Accordingly, his supplemental state-law claims similarly cannot survive summary judgment.

In conclusion, the court stresses that its decision is not intended to diminish plaintiff's legitimate suffering after an unspeakable injury.  However, plaintiff's evidence does not demonstrate that this injury deserves a *constitutional* remedy.  The standard for recovery in these cases is quite high, and the bar for municipal liability even higher.  Plainly speaking, while the IPC and its employees could have behaved differently or established additional safeguards, their behavior manifests no deliberate indifference to plaintiff's constitutional rights, even when the facts are viewed in the light most favorable to the plaintiff.

For the foregoing reasons, defendant's motion for summary judgment (Dkt. 15) is GRANTED. The court arrives this conclusion even considering plaintiff's expert report, which raises no genuine issue of material fact on any dispositive issue.  Thus, defendant's motion to exclude (Dkt. 20) is DENIED AS MOOT.

It is so ORDERED.

Signed at Houston, Texas on April 23, 2007.

_____
Gray H. Miller
United States District Judge

24